United States Court of Appeals,

Eleventh Circuit.

No. 94-2577.

Mathias L. TARI;  Helen A. Tari, Plaintiffs-Appellants,

v.

COLLIER COUNTY;  Burt L. Saunders;  Max A. Hasse, Jr.;  Richard
S. Shanahan;  Michael J. Volpe, et al., Defendants-Appellees.

July 10, 1995.

Appeal from the United States District Court for the Middle
District of Florida. (No. 89-246-Civ.Ftm-17D), Elizabeth A.
Kovachevich, Judge.

Before DUBINA, Circuit Judge, RONEY and ESCHBACH[*], Senior Circuit
Judges.

ESCHBACH, Senior Circuit Judge:

Mathias Tari and his wife ("Tari") brought this action against
Collier County, the Collier County Commissioners in their official
capacities, and the members of the Collier County Code Enforcement
Board in their official capacities ("the County") for the County's
allegedly unconstitutional determination that the Tari's were
operating a fruit tree nursery on their property in violation of a
county zoning ordinance. Tari [1] appeals the district court's
determination that this claim was not ripe for adjudication. We
affirm.

I.

In 1981, Tari opened a wholesale and retail fruit tree nursery
business in Collier County. This operation of a nursery on his

---

[*]Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for
the Seventh Circuit, sitting by designation.

[1]Mr. Tari, as personal representative of his wife's estate,
now represents both interests.

property allegedly violated Collier County Zoning Ordinance 82-2. On February 19, 1989, Tari received a Notice of Violation from a Collier County Code Enforcement Investigator after two investigators had purchased a red rose bush from Tari a few days earlier. The Notice provided that "[a]ll wholesale and retail operations must cease at the above location and all signs must be removed IMMEDIATELY upon receipt of this notice." The Notice went on to state that "[a]ny person who violates this zoning ordinance or fails to comply with any of the requirements shall upon conviction thereof be fined, or imprisoned, or both as provided by law and in addition shall pay all costs and expenses involved in the case. Each day such a violation continues shall be considered a separate offense."[2] After consulting with an attorney, Tari closed down the nursery.

Tari then contacted several individuals within the Zoning Department to investigate the status of his case and to discuss his options. Investigator William Smith and Code Enforcement Director Richard Clark both advised Tari in person and over the phone that if he did not agree with the investigators' interpretation of the zoning ordinance, he could have the matter reviewed by Kenneth Baginski, the Collier County Zoning Director. Tari instead asked County Commissioner Anne Goodnight to investigate the Notice of Violation. On March 23, 1989, Tari received a letter from Assistant County Attorney Brenda Wilson informing him that the County Attorney's Office was researching his matter to provide a

---

[2]The parties dispute whether there was also a written notice of Tari's right to appeal attached to the Notice of Violation.

legal opinion to Commissioner Goodnight as to whether Tari was actually in violation of the zoning ordinance.  After a series of phone conversations with Tari, Wilson sent another letter on June 8, 1989 confirming her explanation to Tari of the County's two alternative methods of enforcing a zoning violation.  According to the letter, one method of enforcement is to prosecute a zoning violation in County Court as a misdemeanor.  Such prosecution, however, would not take place "until such time as our opinion is completed and the State Attorney's Office is directed to proceed."  Wilson further explained that the statement on Tari's Notice of Violation which indicated that each day the nursery remained in operation was a separate offense "does not mean that fines are accruing for each day you operate in violation.  It simply means that each day of violation may be separately investigated and separately cited within an Information...."  A second method of enforcement, according to Wilson's letter, is to take the zoning violation before the Code Enforcement Board.  "All cases brought before the Code Enforcement Board are based on evidence of prior violations, but fines are only assessed prospectively.  If a defendant is found to be in violation, an Order to Comply is entered and fines only begin to run upon non-compliance after the date set for compliance by the Board.  No fines are assessed retroactively."  On July 6, 1989, Wilson submitted her legal opinion to Commissioner Goodnight in which she concluded that Tari's use of the property violated the zoning ordinance.  After the County issued a second Notice of Violation and attempted to schedule a hearing before the Code Enforcement Board, Tari chose to

file suit against the County in state court on October 10, 1989.[3] In his amended complaint, Tari sought damages and an injunction prohibiting the County from applying the zoning ordinance to his property.

On November 7, 1989, the case was removed to federal court. The county moved to dismiss Count V, which alleged an as applied arbitrary and capricious due process claim and Count VI, which alleged a just compensation temporary takings claim, of Tari's complaint on ripeness grounds. According to the County, it had not made a final decision regarding the zoning violation when the notice was issued on February 14, 1989 and therefore the district court lacked subject matter jurisdiction under *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The district court denied this motion. At the preliminary pretrial conference held on July 7, 1993, the County again raised the issue of ripeness in a motion for summary judgment, and the district court referred the matter to a magistrate judge to conduct an evidentiary hearing on the issue. On November 3, 1993, the magistrate judge issued a report and recommendation in which he determined that the complaint was ripe. The district court rejected the magistrate's recommendation on February 28, 1994, and dismissed the complaint on the grounds that Counts V and VI were not ripe for adjudication, and the court thus lacked jurisdiction over the remaining state law claims. A timely notice of appeal was filed.

II.

---

[3]Soon after, Tari reopened the nursery.

The only issue before us concerns the ripeness of Counts V and VI of Tari's amended complaint. "The question of ripeness "goes to whether the district court had subject matter jurisdiction.' " *Reahard v. Lee County,* 30 F.3d 1412, 1415 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995) (quoting *Greenbriar Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 (11th Cir.1989)). Thus, we review the issue *de novo. Id.,* 30 F.3d at 1415.

In an as applied arbitrary and capricious due process claim, a plaintiff claims that the application of a zoning regulation to his property is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals or general welfare, and is therefore an invalid exercise of the police power. *Eide v. Sarasota County,* 908 F.2d 716, 721 (11th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). To remedy such a claim, a court can issue an injunction preventing the unconstitutional application of the regulation to the plaintiff's property, as well as award damages to compensate for the effects of the application. *Id.* at 722. A just compensation temporary takings claim, on the other hand, seeks money damages for the value of the property rights taken by the application of a regulation. *Id.* at 720. To establish a violation of the just compensation clause, a property owner "must demonstrate that his property was "taken,' i.e., that the regulation "goes too far,' and that there is no provision to award him just compensation." *Id.,* (citing *McDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285

(1986)).

For either claim to be considered ripe for adjudication, "the governmental entity charged with implementing the regulations" must have reached a "final decision regarding the application of the regulations to the property at issue."    *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985);[4]  *see Eide,* 908 F.2d at 724.  A final decision is made when the "initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson,* 473 U.S. at 193, 105 S.Ct. at 3120.  As the Court explained in *McDonald, Sommer & Frates* in the context of a just compensation claim, "[a] court cannot determine whether a regulation has gone "too far' unless it knows how far the regulation goes." *Id.,* 477 U.S. at 348, 106 S.Ct. at 2566.[5] Similarly, in an as applied arbitrary and capricious claim, "[i]f the authority has not reached a final decision with regard to the application of the regulation to the landowner's property, the

_____

[4]*Williamson* actually concerned a due process takings claim rather than an arbitrary and capricious due process claim.  The Court required a final decision so as to ascertain the actual effect of the regulation on the value of the property.  This rationale does not apply to an as applied arbitrary and capricious claim.  As we explained in *Eide,* however, a final decision is also required for an as applied arbitrary and capricious claim for the alternative reason that we must determine if the regulation has actually been applied to the landowner's property.  *See Eide,* 908 F.2d at 724, n. 13.

[5]In a just compensation claim, a landowner often must also have applied for at least one variance to a contested zoning ordinance because only then could a jury determine whether and to what extent a landowner was deprived the value of her land. *Reahard,* 30 F.3d at 1415.  If, however, no final decision has been made on the application of an ordinance to the property in the first place, an inquiry into whether the landowner sought a variance is irrelevant.

landowner cannot assert an as applied challenge to the decision because, in effect, a decision has not yet been made." *Eide,* 908 F.2d at 725.[6]  Of course, requiring a landowner to wait until the County has made a final decision to apply a zoning ordinance to his property does not mean that he has to exhaust his administrative remedies and appeal the final ruling of the initial decisionmaker. *Williamson,* 473 U.S. at 193, 105 S.Ct. at 3119;  *Greenbriar Ltd.,* 881 F.2d at 1574 n. 8.   If, however, other actors can still "participate in the [Zoning] Commission's decisionmaking," then a final decision has not yet been made. *Id.*

Applying these legal principles to the instant case, it is apparent that the County had not made a final decision to apply the zoning ordinance to Tari's property by sending the Notice of Violation on February 14, 1989.  Despite the language in the Notice which instructed Tari to cease his operations immediately, it was made obvious to him that the decision of the Code Enforcement Investigator to send the Notice, much like the decision of a police officer to make an arrest, was not a final decision to apply the

---

[6]In *Eide,* this court in dicta also discussed the possibility that the final decision requirement would be satisfied for an as applied arbitrary and capricious claim by "a single arbitrary act." *Id.,* 908 F.2d at 726.  This "depends upon the nature of the claim, which is often revealed by the remedy sought." *Id.* Thus, in *Eide* the court presented the example of a landowner whose application for commercial zoning was denied at the preliminary stages because of his red hair.  If the remedy sought was solely the overturning of that arbitrary decision and an injunction against similar irrational decisions, then the claim might be considered ripe.  If, however, the remedy sought was an injunction requiring the grant of commercial zoning, then the claim could not be considered ripe until a final decision had been made to deny his application for commercial zoning.

zoning ordinance to his property. [7]  Smith and Clark both advised him that the Zoning Director was available to review his case if he disagreed with the Investigator's interpretation of the zoning ordinance.  Tari ignored this advice.  Wilson also told him that she was preparing a legal opinion for Commissioner Goodnight on whether Tari's operation of a nursery on his property actually was a violation of the zoning ordinance.  This should have signalled to him that a final decision had not yet been made.  Furthermore, Wilson informed Tari on the phone and through her June 8, 1989 letter that he would not be subject to any enforcement action until her legal opinion was completed. [8]  Wilson testified in her deposition that she explained to Tari that "he was not prohibited from operating" during the period in which the County attempted to reach a final decision.  The Notice of Violation, Wilson continued, "doesn't operate in the nature of an injunction, you must stop as of this time.  If he disagreed with it, then he certainly had the opportunity to prove that to the Code Enforcement Board."  Tari

---

[7]Nor can Tari's as applied arbitrary and capricious due process claim be considered ripe based upon the "single, arbitrary act" of sending the Notice of Violation.  Rather than simply requesting an injunction against the issuance of Notices of Violation in an arbitrary or irrational manner, Tari seeks an injunction prohibiting the County from applying the zoning ordinance to his property altogether.  Without a final decision from the County as to whether it considers Tari's operation of the nursery to be a violation of the zoning ordinance, and, if so, whether and to what extent it will enforce that violation, we cannot determine if the zoning ordinance was actually applied to his property so that the remedy requested would be necessary.

[8]Thus, the fact that the Code Enforcement Board may not have been fully operational until May of 1989 is irrelevant.  Until Wilson concluded her legal opinion in July of 1989 and recommended that Tari's use of his property be considered a violation of the ordinance, Tari's case was not ready to be heard by the Board.

again chose to ignore this information.[9] Although the status of Tari's property was uncertain during this period, it was not unreasonable for the County to take some time to investigate the matter before coming to a final decision.[10]

Tari protests that these procedures, such as contesting the violation before the Code Enforcement Board, were at best avenues of appeal.[11] If this were true, one would expect fines to relate back to the original Notice of Violation on February 14, 1989. Reversal of the County's decision would relieve Tari of any penalties, but affirmance would place him in the same position he was in when the Notice of Violation was issued. A review of the Code Enforcement Board procedure, as explained to Tari in the June 8, 1989 letter, reveals a much different situation. According to

---

[9]Tari testified at the evidentiary hearing that he did not reopen his nursery because he "was concerned about the heavy fines." Yet, Wilson's June 8, 1989 letter assured Tari that no fines were accruing, and that the Code Enforcement Board would only assess fines prospectively for violations occurring after it had made its decision that a violation did indeed exist.

[10]Thus, Tari's decision to shut down his nursery in the face of the Notice of Violation cannot convert this matter into a ripe claim. "[I]n the context of takings cases, courts have held that a short term delay in the development or use of property is not unreasonable" *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1223 (9th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). *See Agins v. Tiburon,* 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980) ("Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership.' ").

[11]Apparently, Tari never really considered taking his case before the Code Enforcement Board in the first place. "Mr. Tari told me several times that he did not intend to go before the Code Enforcement Board because the Code Enforcement Board had no authority over him, that it was improperly created; that it was beyond their scope; and ... that he would go into court; that he would litigate this." (Wilson Deposition at 25).

Wilson, "fines are only assessed prospectively," even though cases are based on evidence of prior violations. "If a defendant is found to be in violation, an Order to Comply is entered and fines only begin to run upon non-compliance after the date set for compliance by the Board." The Code Enforcement Board, therefore, had the power to actually decide in the first instance whether a landowner had violated a zoning ordinance. It functioned as the initial decisionmaker on any zoning matter which came before it.

Despite the strong language in the Notice of Violation instructing Tari to shut down his nursery, we cannot conclude that this Notice constituted a final decision by the County.[12] "Zoning provides one of the firmest and most basic of the rights of local control." *Stansberry v. Holmes,* 613 F.2d 1285, 1288 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980). Under the circumstances of this case, if a local investigator's issuance of a citation was all that was necessary for a claim to

---

[12]Tari's just compensation claim is not ripe for the additional reason that he failed to satisfy the second hurdle outlined in *Williamson* and pursue an inverse condemnation claim in state court. *Id.,* 473 U.S. at 194, 105 S.Ct. at 3120. In *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 319, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987), the Court held that a state must provide just compensation where a land regulation temporarily deprives a landowner of the value of his property. To the extent that there was some confusion in Florida courts as to whether such a remedy existed before *Joint Ventures, Inc. v. Department of Transp.,* 563 So.2d 622, 624 (Fla.1990), *see Reahard,* 30 F.3d at 1417, this court "has held that a Florida property owner must pursue a reverse condemnation remedy in state court before his federal takings claim will be ripe, even where that remedy was recognized after the alleged taking occurred." *Id.,* (citing *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1542 (11th Cir.1991), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991)). In any event, the question should have been resolved by *First English,* which was issued long before the alleged taking in this case.

ripen, the federal courts would become "master zoning boards" in disputes which are best handled at the local level. The governmental entity charged with implementing the zoning ordinances must be given an opportunity to make a final decision as to whether to apply an ordinance to a landowner's property before the landowner can complain of that decision in a federal forum.

### III.

For the above reasons, the judgment of the district court is AFFIRMED.