Devoe L. MOORE, Individually, and Devoe L. Moore, as Trustee of ABAC Auto Parts, Inc. Profit Sharing Trust and ABAC Auto Parts, Inc. Pension Trust, Plaintiffs,

v.

CITY OF TALLAHASSEE, a municipal corporation, organized under the laws of the State of Florida, Defendant.

No. 94–40623–MMP.

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 4, 1995.

Charles R. Gardner, Bruce Ivan Wiener, Gardner, Shelfer, Duggar & Bist, Tallahassee, FL, for plaintiffs.

J. Steven Carter, City Attorney, Edwin R. Hudson, Henry, Buchanan, Mick & English, Tallahassee, FL, for defendant.

## ORDER

PAUL, Chief Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 42). Plaintiffs filed a response thereto (doc. 48). For the reasons explained at length below, Defendant's motion is hereby GRANTED IN PART.

## I. BACKGROUND:

### (a) The Complaint

This lawsuit, originally filed in Florida state court, contains two actions brought by Mr. Devoe Moore and ABAC Auto Parts, Inc. ("Plaintiffs") against the City of Tallahassee ("Defendant"). The first count is a 42 U.S.C. § 1983 action which alleges injury as a result of Defendant's violation of Plaintiffs' substantive due process rights under the Constitution of the United States.[1] The second count is a pendent state law claim in inverse condemnation. In the second count, Plaintiffs seeks damages from Defendant as a result of Defendant's acts which amounted to a temporary deprivation of Plaintiffs' use of their property.

### (b) The Facts as Alleged by Plaintiffs

In September of 1987, the Plaintiffs purchased a 28.6 acre tract of land ("the Land") for $1,000,000. Plaintiffs allege that it was their purpose to develop the Land—which, at the time of the sales transaction, was zoned for service, commercial and industrial uses—soon after purchasing it.

Four months before Plaintiffs purchased the Land, Plaintiffs' predecessor-in-interest ("Elberta") was informed that it must raze certain structures which were on the Land. In the course of the demolition process, Elberta discovered an old sewer line—owned and operated by Defendant—on the Land. Elberta then learned that Defendant: (1)

---

1. There is apparently some confusion between the parties as to whether Plaintiffs have alleged a § 1983 claim on *procedural* due process grounds. The Court's close reading of Plaintiffs' Memorandum in Response to Defendant's Motion for Summary Judgment (doc. 48) indicates that Plaintiffs are not asserting a procedural due process § 1983 claim. However, the Pre-trial Stipulation incorporates reference to a procedural due process claim (doc. 51 at 22).

As is discussed, *infra*, Plaintiffs have no grounds to raise a procedural due process claim in this lawsuit.

owned no easement for the existing sewer line, and (2) needed to install a new sewer line on the Land to take the place of the existing one. Elberta and Defendant entered into negotiations to investigate the possibility of granting an easement to Defendant for the sewer lines, but no agreement could be reached before Elberta sold the Land to Plaintiffs.

Once Plaintiffs acquired the Land, they began a dialogue of their own with Defendant concerning Defendant's need for an easement over what was now Plaintiffs' Land. Through the negotiation process, the parties came to a verbal agreement—apparently some time in the early fall of 1987—as to the location of the Defendant's proposed sewer line, and as to the terms of the easement that would be given to Defendant by Plaintiffs. Defendants indicated that a member of the city attorney's office would draft the formal easement so that it could be executed and construction of the new sewer line could begin. In fact, the easement was not drafted by Defendant until April of 1989. Plaintiffs allege that they were prepared to grant the easement to Defendant at the time of their purchase, but the attorney for Defendant put off the drafting for over a year-and-a-half despite Plaintiffs' repeated requests for action.

Prior to the sale of the Land, Elberta had obtained a stormwater permit which enabled it to perform fill work on the Land. Plaintiffs acquired the rights to this permit when the Land was purchased. In May of 1988 (eight months after Plaintiffs' purchase), Plaintiffs obtained an amendment to the original stormwater permit. Pursuant to this newly issued permit, Plaintiffs began to place fill on the property and began to construct a stormwater facility on the Land as a preliminary step in their development strategy. Plaintiffs assert that they submitted three sets of plans to the permitting agency at the time of their application for an amended permit, and they assert further that one of these sets was a "development plan" which indicated that the Land was to be used for the construction of a series of buildings and driveways. Defendant claims that no such plans were tendered.

Even after the year-and-a-half delay in executing the easement, Defendant was not able to complete construction of the sewer line on Plaintiffs' Land until February of 1991.[2] Plaintiffs' allegation is that Defendant subjected them to this extended delay so that Defendant could eventually acquire the Land from Plaintiffs at as low a price as possible. In support of this allegation, Plaintiffs note that—under what was known as the Tallahassee–Leon County Comprehensive Plan ("the Plan")—the permitted land use of their property was changed in July of 1990. The Plan included a vested rights provision under which a landowner who had already taken certain steps to develop his property under the previously-controlling zoning regulations could proceed without being subject to the Plan's new provisions. Plaintiffs allege that Defendant's delay strategy was adopted to ensure that Plaintiffs would not qualify for vested rights. They further assert that Defendant rejected two separate vested rights applications that were submitted. Plaintiffs claimed that the amended stormwater permit which they obtained in 1988 entitled them to vested rights. Plaintiffs' position in this lawsuit is that prior to Plaintiffs' application for vested rights status, Defendant and its officials had agreed that it would be necessary to acquire Plaintiffs' Land for the purpose of constructing a regional stormwater facility that would service the city and its two major universities. Plaintiffs allege that the vested rights staff review committee was comprised of individuals privy to Defendant's plan to acquire the Land. Due to this allegedly improper motive—i.e., denying the applications so that the value of the Land would be depressed and the city could therefore acquire it more cheaply—Plaintiffs' applications for vested rights status were denied. Plaintiffs allege that this denial of their applications represents arbitrary and capricious treatment of Plaintiffs in violation of their substantive due process rights under the Constitution in light of Defendant's plan to attain the Land itself.

2. In other words, Plaintiffs allege that it took nineteen months for Defendant to draft the easement, and another twenty-two months for the actual construction project to reach completion.

In early 1992, after vested rights had been denied, Plaintiffs were approached by a development corporation ("Coastal") that wished to purchase the Land. Coastal made a $5,250,000 offer to Plaintiffs for the Land—an offer which was contingent on its ability to develop the Land into apartment complexes that would serve the near-by university communities. Under the Plan, the Land had been reclassified as "Central Urban". This meant that it could be used to provide, among other things, residential facilities of up to 45 dwelling units per acre. Notwithstanding this classification under the Plan, when Coastal applied for a land use certificate from Defendant, Defendant informed it that it would only be able to develop the Land for residential facilities with a range of 6 to 20 dwelling units per acre. On the basis of this determination, Coastal withdrew its purchase offer. Plaintiffs allege that this opinion from Defendant represents further arbitrary and capricious treatment of Plaintiffs in violation of their substantive due process rights under the Constitution.

On March 28, 1995, Plaintiffs sold between 25 and 26 acres of the Land to the State of Florida for $3,615,000. The balance of the Land remains under contract to be purchased by the State for $385,000.

## II. ANALYSIS:

### (a) Summary Judgment Standard

█ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must grant a motion for summary judgment unless the party opposing the motion produces evidence from which a "fair minded jury could return a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ The moving party—here, Defendant—bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct.

2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(e) requires the non-moving party—Plaintiffs here—to go beyond the allegations raised in the pleadings; by affidavits, deposition testimony, and the like, the non-moving party must designate specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Because the movant bears the burden of proof, however, the district court typically resolves all reasonable doubts about facts in favor of the non-movant and draws all justifiable inferences from the underlying facts in the non-movant's favor. *McCabe v. Sharrett,* 12 F.3d 1558, 1560 (11th Cir.1994); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

### (b) Procedural Due Process Claim

█ Even when the record is viewed in the light most favorable to Plaintiffs, the Court finds that Plaintiffs are unable to raise a genuine issue of material fact which would support a § 1983 claim on procedural due process grounds. Thus, summary judgment on this particular issue is appropriate.

Plaintiffs' "challenges" to the procedures employed by Defendant, in essence, are claims that various city officials who determined the vested rights status of Plaintiffs' Land—as well as those who gave an opinion to Coastal about the Land's development potential under the Plan—knew of Defendant's need to acquire the Land for its own purposes and were therefore biased decisionmakers acting under a clear conflict of interest. Such challenges, even if believed, do not amount to a deprivation of procedural due process.

█ As Defendant notes in its memorandum of law, procedural due process is not violated by the mere presence of a biased decisionmaker in the initial stages of a state's decisionmaking process where there is a means available for a disappointed party to appeal the allegedly biased decisionmaker's opinion to an objective forum. As the Court held in *McKinney v. Pate,* 20 F.3d 1550, 1562 (11th Cir.1994), "[a] demonstration that the decisionmaker was biased ... is not tantamount to a demonstration that there has been a denial of due process." To make the

required demonstration, a party needs to show that the state has refused to make available a means of remedying the bias that may have existed in the initial stage of the proceedings. *Id.*

■ All that procedural due process requires is a post-deprivation means of redress to correct any error which may have resulted from conflict of interest or bias. *Id.* at 1563. Plaintiffs claim that their applications for vested rights and Coastal's application for land use were entertained and considered by biased decisionmakers—i.e., officials employed by Defendant. Plaintiffs ignore the fact, however, that the vested rights ordinance provides for at least two levels of appeal to unbiased fora: first, appeal as of right to an impartial hearing officer, and, if necessary, further appeal by certiorari to a state circuit court judge. Similarly, the opinion from Defendant's officials concerning Coastal's development of the Land under the Plan was governed by a statute which afforded appeals of the opinion by petitions for certiorari to a state circuit court. Thus, "[e]ven if [the] bias allegations are true, the presence of a satisfactory state remedy mandates that [the Court] find that no procedural due process violation occurred." *Id.* at 1564.

### (c) Substantive Due Process Claim

■ The case of *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990), sets out the analytical framework that the Court must utilize in assessing the merits of Plaintiffs' § 1983 claim. As the *Eide* opinion instructs, the first step in this Court's analysis must be a determination of the type of substantive due process claim that Plaintiffs here are bringing. *Id.* at 720. There are four types of substantive due process challenges that a plaintiff in the position of Plaintiffs here may raise: just compensation claims, due process takings claims, arbitrary and capricious due process claims, and equal protection claims. *Id.* Before proceeding, this Court must therefore review Plaintiffs' allegations to de-

termine where this lawsuit falls within these four categories.

■ Reviewing the record as a whole, it appears that Plaintiffs' substantive due process complaints center on the following: (1) Defendant's dilatory tactics undertaken to subject Plaintiffs' Land to the Plan and thereby depress its value, (2) Defendant's self-interested denial of Plaintiffs' applications for vested rights status, and (3) Defendant's self-interested issuance of a land use certificate to Coastal which unduly restricted the development potential of the Land under the Plan. The Court finds that Plaintiffs' allegations amount to an "as applied" arbitrary and capricious due process claim. *See id.* at 721–22. This brand of substantive due process claim is one which alleges that the plaintiff has suffered damages as a result of the defendant applying a facially neutral ordinance to the plaintiff's property in an arbitrary and capricious manner—i.e., a manner that does not bear a substantial relation to public health, safety, morals, or general welfare.[3]

■ In order to prove an as applied arbitrary and capricious due process violation, a plaintiff must demonstrate two things. First, the claim must be shown to involve a constitutionally protected or fundamental interest; second, the claim must be shown to represent an abuse of government power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.1991).

■ The Court finds that a constitutionally protected interest is at stake in this litigation—namely, the right of Plaintiffs to develop and/or sell the Land. Individuals' ability to own land and put it to lawful use is a fundamental American freedom. *See State of Washington v. Roberge,* 278 U.S. 116, 121, 49 S.Ct. 50, 52, 73 L.Ed. 210 (1928) ("[T]he right ... to devote ... land to any legitimate

---

3. Plaintiffs have made no claims that the Plan or its vested rights provisions are arbitrary and capricious in themselves. Rather, Plaintiffs have alleged that Defendant invoked the Plan as the mechanism through which it could achieve its desired end of depressing the land's value so that

it could acquire the land at a reduced cost; in other words, Plaintiffs claim that, in its particular application of the Plan to their land, Defendant acted arbitrarily and capriciously and thereby violated their substantive due process rights.

use is property within the protection of the Constitution").

■ The key inquiry in an as applied arbitrary and capricious due process case is the second prong of this two-part test. This is so because substantive due process protects the general right of an individual to be free from the abuse of governmental power— it does not protect an individual from a mere tort. *Rymer v. Douglas County*, 764 F.2d 796, 802 n. 4 (11th Cir.1985). The Court finds that Plaintiffs meet this part of the test.

■ Looking at the record in the light most favorable to Plaintiffs, and drawing all justifiable inferences in their favor, the Court finds that the record contains evidence which, if believed, would support Plaintiffs' position that Defendant abused its legitimate powers. There is evidence in the record which indicates that officials of Defendant met and developed a strategy to obtain the Land for Defendant's own stormwater needs. In the course of carrying out this plan, officials of Defendant undertook steps to insure that Plaintiffs could not develop the Land profitably on their own, and to insure that Plaintiffs did not sell the Land to Coastal for $5.25 million. As a result of its self-interested decisions regarding the Land, Defendant rendered Plaintiffs unable to develop the Land and maximize their investment. Eventually, Defendant's strategy forced Plaintiffs to abandon their plan of either developing the Land on their own or selling it to another private developer; they were forced to agree to sell the land—at a substantially reduced price—to the State of Florida.

■ The Court finds that the targeting of Plaintiffs' Land for public acquisition, in itself, would not amount to egregious conduct indicative of governmental abuse. Such is not, however, the basis of the present complaint. Plaintiffs have proffered evidence that Defendant took steps to apply facially neutral ordinances to the Land in such a way as to depress its value and to scare off competing purchasers from the private sector so as to insure that it would have the opportunity to acquire the Land at a price substantially less than would be fetched in the open market. The Court finds that this course of behavior, if believed, would amount to an abuse of governmental power sufficient to comprise a constitutional violation under the Fourteenth Amendment.[4]

### (d) Inverse Condemnation Claim

■ Defendant cites *Joint Ventures, Inc. v. Dept. of Transportation*, 563 So.2d 622, 624 (Fla.1990), and notes that the Florida approach to claims of inverse condemnation requires Plaintiffs to demonstrate a deprivation of the Land's economically-viable use, and a deprivation of their reasonable investment-backed expectations. Defendant then argues that Plaintiffs are unable to make the required *Joint Ventures* demonstration because it is undisputed that—once Plaintiffs' sales contract with the State of Florida has been fulfilled—Plaintiffs will have sold the Land for $4,000,000. Once it is complete, that is, the sale of the Land will have netted Plaintiffs approximately $2.5 million in profit. Defendant therefore concludes that the Court should grant it summary judgment on the inverse condemnation claim.

■ The Court cannot agree with Defendant's position on this issue. As Plaintiffs note, Florida recognizes that a *temporary* deprivation of the economically-viable use of an individual's land constitutes a taking. *Tampa–Hillsborough Expressway v. A.G.W.S.*, 640 So.2d 54, 58 (Fla.1994). Thus, an individual is entitled to payment of just compensation from a governmental body when it interferes with the individual's economic use of his property for a finite period

---

**4.** Defendant has also raised the issue of ripeness in the course of its argument that summary judgment is appropriate here. In the recent case of *Tari v. Collier County*, 56 F.3d 1533, 1535 (11th Cir.1995), the Eleventh Circuit held that an arbitrary and capricious due process claim is ripe for adjudication once the governmental agency charged with implementing a regulation has reached a final decision regarding the application of that regulation to the property at issue in the lawsuit. The landowner is not required to exhaust administrative remedies and appeals before bringing the claim. *Id.* at 1536.

The record indicates that Defendant's officials reached a firm decision on Plaintiffs' application for vested rights prior to the filing of this complaint. Likewise, Defendant's officials gave a firm decision on Coastal's application for a land use opinion under the Plan. Accordingly, Defendant's ripeness argument must be rejected.

of time. *Id.* That is exactly the claim that Plaintiffs have raised in this lawsuit.

Plaintiffs have introduced evidence which, if believed, indicates that Defendant's calculated, dilatory tactics prevented them from developing their land for roughly four years. The Court therefore finds that the record contains sufficient evidence to merit a trial on the pendent inverse condemnation claim.[5]

### III. CONCLUSION

Summary judgment is appropriate only as to Plaintiffs' procedural due process claim under § 1983. Genuine issues of fact remain to be litigated for the substantive due process portion of the § 1983 cause of action. Additionally, genuine issues of fact remain for the pendent inverse condemnation claim.

It is hereby

**ORDERED AND ADJUDGED**

(1) Defendant's Motion for Summary Judgment is GRANTED IN PART.

(2) Trial of this matter will be limited to two issues: (i) Were Plaintiffs denied substantive due process?, and (ii) Did Defendant's acts amount to a temporary inverse condemnation of Plaintiffs' property?

(3) As noted in a previous order dated October 12, 1995 (doc. 53), the trial will commence with an attorney's conference on January 8, 1996 at 9:00 a.m.

(4) The Court reminds the parties to submit their Trial Memoranda and Proposed Jury Instructions prior to 12:00 p.m. on Friday, January 5, 1996. The parties shall address only the substantive due process and inverse condemnation issues therein.

(5) The Clerk is directed to take note that the Motion for Extension of Time (doc. 50) is MOOT.

**DONE AND ORDERED.**

---

5. Once again, Defendant's ripeness argument must be rejected. Plaintiffs have alleged a temporary taking by Defendant which rendered them unable to develop or otherwise utilize their land for over four years. Because Defendant's ripeness argument assumes—incorrectly—that Plaintiffs' inverse condemnation claim has some logical nexus to or is somehow based on their applications for vested rights, the Court finds it unnecessary to address the argument at length. It is enough to say that Defendant's argument lacks merit under the facts as they have been alleged.