Matthew WOHL, Trustee d/b/a Great Southern Hotel, Plaintiff,

v.

CITY OF HOLLYWOOD, a Florida municipality and James Ward, Defendants.

No. 93–6500–CIV–HIGHSMITH.

United States District Court, S.D. Florida.

Dec. 13, 1995.

Daniel L. Abbott, Chief Litigation Counsel, Hollywood, FL, for City of Hollywood.

Pamela S. Terranova, of-counsel, Diaz and Bass, P.A., Fort Lauderdale, FL, for James Ward.

Douglas J. Snyder, Douglas J. Snyder, P.A., Coral Gables, FL, for plaintiff.

### ORDER ON SUMMARY JUDGMENT MOTIONS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant James Ward's Motion for Summary Judgment, filed October 11, 1995 and Defendant City of Hollywood's Motion for Summary Judgment, filed October 10, 1995. For the reasons discussed below, this Court grants both motions for summary judgment in favor of Defendant James Ward and Defendant City of Hollywood and against the plaintiff.

## I. UNDISPUTED FACTS

The plaintiff, Matthew Wohl ("Wohl") is the sole trustee of three trusts that have an ownership interest in the Great Southern Hotel ("the Hotel"), a landmark building located on Young Circle in the city of Hollywood ("the City"), Florida. When it was in operation, the Hotel rented rooms on the upper two floors to low-income families on a month-to-month basis. The first floor of the Hotel consisted solely of commercial establishments.

In July 1989, the City formulated a task force to address the homeless problem in Hollywood, which problem allegedly contributed to the existence of drug usage and other crimes in the park at Young Circle. The City utilized the fire department to confront the homeless problem by enforcing the fire codes against buildings catering to low-income persons. The fire department, under the direction of Defendant James Ward ("Ward"), the fire chief, performed random fire code inspections of such buildings, including the Hotel.

In January 1990, the State of Florida passed a law requiring that all public lodging establishments be equipped with a sprinkler system by October 1990. Wohl received an extension from the State until October 1991. In September 1991, Wohl submitted plans for the installation of a sprinkler system to the City's building and zoning department for approval. The City rejected the plans and referred Wohl to the fire department. The fire department concluded that, although the plans conformed to statutory and code requirements, the Hotel would be required to retrofit all floors with the sprinkler system, not just the living areas on the upper two floors. Thus, Wohl would have to retrofit the first floor of the Hotel, as well, at significant expense.

On September 12, 1991, shortly before the deadline for Wohl's compliance with the law regarding installation of a sprinkler system, the City and its fire department performed a comprehensive inspection of the Hotel and noted several code violations, including the lack of a sprinkler system. As a result, Ward imposed a "live fire watch" at the Hotel. Ward gave Wohl thirty (30) days to comply with all code requirements, including installation of the sprinkler system, and stationed two firemen at the Hotel around the clock. The cost of this live fire watch, approximately $1,100.00 per day, was to be

borne by the Hotel. On September 24, 1991, after Ward also fined Wohl $12,500.00 for having to institute the live fire watch, Wohl closed the Hotel.

On June 8, 1992, the City's Code Enforcement Board (the "Board") officially sanctioned Ward's actions of fining Wohl $12,500.00. Wohl appealed the Board's final order to the Circuit Court for Broward County, Florida, arguing that the Board had exceeded its authority. On October 25, 1993, the Circuit Court agreed with Wohl and reversed the Board's order, holding that the City's Code of Ordinances did not authorize the City or Ward to impose a fine for the live fire watch. The Circuit Court's order is under appeal.

Thereafter, Wohl commenced this action pursuant to 42 U.S.C. § 1983. Wohl alleges that the actions of the City, or alternatively, the actions of Ward in his individual capacity, deprived Wohl of his constitutional right to freely engage in contractual relations, his right to own land without interference·from the government, and his right to substantive due process pursuant to the Fourteenth Amendment.[1]

## II. STANDARD OF REVIEW

In deciding a summary judgment motion, a court must apply the standard stated in *Fed. R.Civ.P.* 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard, the Eleventh Circuit has stated that:

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all

factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–480 [64 S.Ct. 232, 234–235, 88 L.Ed. 239] (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512.

## III. DISCUSSION

### A. Ward's Summary Judgment Motion

■ Ward asserts that, as the Hollywood Fire Chief, he is entitled to qualified immunity from personal liability. Qualified immunity protects government officials performing discretionary functions from liability in their individual capacities "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitz-*

---

1. Wohl's amended complaint included a claim against the City under the takings clause of the Fifth Amendment and a claim against Ward in his official capacity as the City Fire Chief. These claims were dismissed by Order of this Court dated June 30, 1994.

*gerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994).

■ In addressing Ward's defense of qualified immunity, the Court applies the following two-step analysis utilized by the Eleventh Circuit:

1. The defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred....

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992) (citation omitted). Since Wohl has not challenged the proposition that Ward was acting within the scope of his discretionary authority as a fire chief, the Court concludes that Ward has satisfied the burden imposed by the first step of the analysis. The Court proceeds, therefore, to the second prong of the analysis.

■ In order to survive Ward's summary judgment motion, Wohl must demonstrate that Ward's actions violated clearly established law. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Lassiter,* 28 F.3d at 1149; *Lowe,* 958 F.2d at 1570. Wohl does not suggest, however, that Ward's *actions* violated clearly established law; rather, Wohl asserts that Ward's *motivations* violated Wohl's constitutional rights. Wohl contends that Ward's objective was not fire safety, but the forced closing of the Hotel through the imposition of oppressive fees which would depress the Hotel's property value, thereby violating Wohl's substantive due process rights. Ward's motives are irrelevant because "[t]he subjective intent of government actor defendants plays no part in qualified

immunity analysis." *Lassiter,* 28 F.3d at 1150. "Although the cases sometimes refer to the doctrine of qualified "good faith" immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith." *Swint v. City of Wadley,* 51 F.3d 988, 995 (11th Cir.1995).

■ The undisputed facts make clear that, regardless of the timing of the inspections, the Hotel did not comply with the fire code requirements at the time of the initiation of the live fire watch. It is also undisputed that the fire chief was vested with the power to institute a live fire watch when public safety was in jeopardy and that Ward, in fact, lawfully imposed the live fire watch. Since no genuine issue of fact exists with regard to Ward's summary judgment motion, summary judgment is granted in favor of Defendant Ward and against the plaintiff.

## B. The City's Summary Judgment Motion

### 1. Liability

■ A municipality is liable under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *see also Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994). The City first contends that Wohl has failed to identify a policy which led to the deprivation of his constitutional rights. Contrary to the City's assertion, however, Wohl has consistently attributed the loss of his contract and property rights to the City's policy of closing those buildings that house low-income persons and attract the homeless in order to rid the City of its "homeless problem." To demonstrate the existence of this policy, Wohl has annexed to his response to the summary judgment motion the meeting minutes of the City's Task Force on Downtown and the Homeless.[2] These minutes, along with sup-

---

2. The meeting was attended by the City Mayor, three City Commissioners, Defendant Fire Chief

Ward, the Police Chief, the Parks and Recreation Director, the Code Enforcement Director, the

porting affidavits and follow-up memoranda, indicate that the City undertook a policy of "police, fire and building code enforcement ... in a *targeted* manner" which would eliminate the low-cost housing that had helped to create a hospitable environment for vagrants. Plaintiff's Response to the City's Motion, Exh. 7, p. 3 (emphasis added). For the purpose of further analysis, therefore, the Court assumes the existence of the requisite policy on the part of the City.

### 2. Due Process

In his complaint, Wohl seeks damages for the City's deprivation of his "constitutional rights to freely engage in contractual relations, to own land without interference from the government and his right to substantive due process pursuant to the Fourteenth Amendment of the United States Constitution." Amended Complaint, ¶ 50. The City asserts that no precedent exists for recognizing a substantive due process right to own property in contravention of applicable fire codes. Indeed, in his response to the City's summary judgment motion, Wohl has failed to present, and this Court has not uncovered through its own research, any basis for recognizing an absolute right to engage in contractual relations or to own property without government interference.

In fact, the Eleventh Circuit recently overturned prior circuit law concerning alleged violations by executive act of substantive due process rights. *See McKinney v. Pate,* 20 F.3d 1550, 1553 (11th Cir.1994), *cert. denied McKinney v. Osceola Cty Bd. of Cty Comm.,* — U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). The decision of the *McKinney* court

suggests that in "non-legislative cases," otherwise referred to as "executive-act cases," the plaintiff alleging a due process violation may assert a claim only for *procedural* due process. *Id.* at 1557 n. 9 & 1559.[3] In such a case, a complaint asserting a violation only of substantive due process, therefore, would be dismissed. This case may appropriately be deemed an executive-act case because the alleged deprivation of Wohl's constitutional right occurred not by legislative act, but rather by the act of the fire chief in instituting the live fire watch. Since Wohl does not make a claim for procedural due process, this Court's analysis could end here with the granting of summary judgment in favor of the City. However, in an abundance of caution, and in recognition of the potentially narrow parameters of the Eleventh Circuit's holding in *McKinney,* this Court shall proceed to analyze Wohl's claim under traditional substantive due process principles.

### 3. Substantive Due Process

"To support a claim under the Fourteenth Amendment for deprivation of property without due process of law, the [plaintiff] must first establish that [he] had a valid 'property interest' in some benefit that was protectible under the Fourteenth Amendment at the time [he was] deprived." *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989). Second, the plaintiff must demonstrate "that the City was acting with an improper motive or was acting arbitrarily or capriciously without rational basis for its actions." *Id.* at 260.

#### a. Protectible Interest

Wohl alleges a violation of his "constitutional rights to freely engage in contractual relations [and] to own land without interfer-

---

Chief Code Enforcement Officer, the Economic Development Director, the Community Development Director, a Community Redevelopment Agency member, and the Economic Development Advisory Board Chairman, among many others. Therefore, the Court will assume without deciding, for purposes of this summary judgment motion, that the task force included those " 'officials responsible for establishing final policy [for the City] with respect to the subject matter in question.' " *Collins v. City of Harker Heights,* 503 U.S. 115, 122, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261 (1992) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

3. In finding that no substantive due process right exists in such cases, the *McKinney* court noted that

> the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*McKinney,* 20 F.3d at 1556 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992).

ence from the government." Amended Complaint, ¶ 50. "'Liberty' and 'property' are broad and majestic terms ... purposely left to gather meaning from experience." *Bd. of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (quoting *National Mutual Ins. Co. v. Tidewater Transfer Co,* 337 U.S. 582, 646, 69 S.Ct. 1173, 1195, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)).

> While [the Supreme Court] has not attempted to define with exactness the liberty guaranteed by the Fourteenth Amendment, the term ... [w]ithout doubt, [ ] denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life ... and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men.

*Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). Certainly, Wohl's right to own property and to enter into contracts is well established. However, that right is not absolute.

### b. The City's Conduct

The City's asserted motive for instituting the live fire watch was fire safety. "Fire protection is clearly a legitimate government interest." *Burstyn v. City of Miami Beach,* 663 F.Supp. 528, 533 (S.D.Fla.1987). A government may abridge the right to own property and to enter into contracts to the extent that such abridgement is rationally related to that interest. Wohl does not dispute that the imposition of a live fire watch in a building containing fire code violations is rationally related to fire safety.

Wohl contends, however, that the live fire watch was imposed in pursuit of an "abhorrent" policy of closing down those facilities that attract an undesirable element to the area. Yet, he provides no support for his contention that such a goal is improper. Indeed, case law suggests that such a policy is entirely proper. For instance, in *Armendariz v. Penman,* 31 F.3d 860 (9th Cir.1994), *rhr'g granted* 41 F.3d 493 (9th Cir.1994), landlords of low-income apartment buildings brought an action against city officials under 42 U.S.C. § 1983 to recover for apartment buildings that were closed as a result of housing code inspections revealing violations. The city attorney had instituted a coordinated plan of code enforcement by key agencies in certain "targeted" areas. *Id.* at 864. The plaintiffs in that case alleged that the true motivation for the closure of their properties was to reduce crime by relocating criminals and to decrease urban blight, not to enforce the housing and fire codes. *Id.* at 867. The court, however, determined that such a motive was proper:

> [T]he reduction of crime by relocating criminals and reducing urban blight bears a rational relation to the public health, safety and general welfare. Thus, although [the housing inspectors] may have "faked" the emergency [nature of the inspections], their doing so bore a sufficient relation to the general welfare such that plaintiffs have no claim for a violation of substantive due process.

*Id.* at 867. Similarly, in the instant case, the City's desire to close those buildings that violate fire codes and attract a transient population, thus leading to increased crime and urban blight, is rationally related to the public health, safety and general welfare. Therefore, the City did not violate Wohl's substantive due process rights and the Court concludes that the City is entitled to prevail on Wohl's § 1983 claim.

## IV. CONCLUSION

In light of the foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

A) Defendant James Ward's motion for summary judgment is GRANTED.

B) Defendant City of Hollywood's motion for summary judgment is GRANTED.

C) Pursuant to *Fed.R.Civ.P.* 58, the court shall enter judgment in favor of the defendants and against Wohl by separate order.

**DONE AND ORDERED.**